UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
KAREN E.S. MEADOR and ROBERT J.
MEADOR, JR.,

                       Plaintiffs,                5:08-CV-562

        v.

ALBANESE LAW OFFICE and JONATHAN O.
ALBANESE,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                  OF COUNSEL:

PINNISI & ANDERSON, LLP               MICHAEL D. PINNISI, ESQ.
Attorneys for Plaintiffs
111 N. Tioga Street, Suite 200
Ithaca, New York 14850

WILSON, ELSER, MOSKOWITZ, EDELMAN    JOSEPH T. PERKINS, ESQ.
& DICKER LLP
Attorneys for Defendants
677 Broadway
Albany, New York 12207

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Plaintiffs Karen E.S. Meador, M.D. ("Dr. Meador") and Robert J. Meador, Jr. ("Mr.

Meador") (collectively "plaintiffs" or "Meadors") brought suit against the Albanese Law Office

(the "Office") and Jonathan O. Albanese, Esq. ("Albanese") (collectively "defendants")

alleging legal malpractice, breach of fiduciary duty, negligent representation, and negligence.

Defendants moved for summary judgment to dismiss the complaint pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Plaintiffs opposed and cross-moved for summary judgment on liability. Oral argument was heard in Utica, New York on June 2, 2010. Decision was reserved.

## II. BACKGROUND

The following facts are undisputed unless otherwise noted. In 2000 non-parties Joan and Stuart Anderson (the "Andersons") retained Albanese to represent them in the purchase of real property located on the western shore of Cayuga Lake at 9818 Watermark Road, in Trumansburg, New York (the "lakefront property"). In 2003 the Andersons brought suit against Albanese for legal malpractice. The Andersons alleged Albanese was negligent for failing to advise them regarding a right-of-way encumbering their property[1] and failing to determine the deed granted 75.9 feet of waterfront instead of the 117 feet stated in the contract. See Pls'. Statement of Material Facts ("SMF"), Ex. A, Dkt. No. 37-1. The complaint also alleged against other defendants structural defects in the house on the lakefront property. The claims against Albanese were settled by payment of an agreed sum to the Andersons in return for a release.

In June 2005 plaintiffs, residents of Texas, entered into a contract (the "Purchase Agreement")[2] with the Andersons to purchase the lakefront property. The Purchase Agreement included an attorney approval cause that permitted either party to cancel the

---

[1] After their purchase of the property, the Andersons constructed a detached garage on the right-of-way, and placed fuel tanks and landscaping structures which encroached on neighboring properties. Additional encumbrances, such as a required drainage system and retaining wall, among others, had also been attached to the property.

[2] The Meadors signed and delivered the proposed Purchase Agreement to the Andersons on May 31, 2005. The Andersons signed the Purchase Agreement on or about June 2, 2005.

contract within three business days of acceptance of the offer.  The contract also contained a provision which provided:

> Buyer's attorney shall have abstract and legal papers for examination at least twelve (12) days before closing.  If defects are found in the title as shown by abstract, a written statement of objections shall be furnished, and Seller shall have a reasonable time, not exceeding thirty (30) days, to make said title marketable.

Pinnisi Decl., Ex. C, Dkt. No. 34-11 ("Notice to Cure" provision).

The Meadors put down a $25,000 deposit toward the $720,000 purchase price.  After the contract was signed, the Meadors retained defendants on June 6, 2005, to represent them in the transaction.  The parties dispute whether prior to plaintiffs retaining Albanese, he informed them he had previously represented the Andersons in any capacity and that he had been sued by the Andersons.  Defs'. Response to Pls'. SMF ¶ 20, Dkt. No. 40-3.  It is undisputed defendants at that time did not inform the Meadors that the detached garage on the property encroached upon a right-of-way and violated setback requirements, nor did they advise plaintiffs the house was alleged to have structural defects.  After engaging defendants, Dr. Meador requested she be kept informed of the progress and be given copies of any correspondence related to the transaction.

On June 23, 2005, the attorney for the Andersons delivered a letter to defendants which disclosed some but not of all the encumbrances and defects to the title.  It is disputed whether a telephone call between Albanese and Dr. Meador took place on June 24, 2005.  Defendants did not investigate the disclosed defects in the title at that time, opting to wait for voluntary disclosure by the Andersons' attorney.  Albanese did not disclose the encumbrances to plaintiffs, nor did he inform them he was expecting further information regarding the same from the Andersons' attorney.  On July 11, 2005, defendants received

additional information regarding the defects.  Albanese again failed to inform the Meadors of these disclosures.  The parties dispute whether Albanese or the Office informed Dr. Meador the closing would occur on or about July 20, 2005.

Plaintiffs contend that in reliance upon this communication, they liquidated assets, transferred funds, alerted their lender and secured insurance in anticipation of the closing.  Dr. Meador then traveled to Ithaca, New York on or about July 19, 2005, to attend the closing.  Pls'. SMF ¶¶ 37-39, Dkt. No. 37.  On July 20, 2005, she attended a pre-closing inspection of the property, during which time she discovered several title encumbrances from the Andersons' realtor as well as the encroachments on the neighboring properties.  Id. ¶ 41.

The Meadors contacted defendants and requested they terminate the contract and return plaintiffs' $25,000 deposit.  Albanese then communicated with the Andersons' attorney and requested the contract be dissolved and the deposit returned.  On July 28, 2005, defendants forwarded a list of objections regarding the property prepared by Dr. Meador to the Andersons' attorney.  The Meadors allege they made several attempts to contact Albanese between July 28, 2005, and August 15, 2005, to determine the status of the matter, but were told by staff of the Office that Albanese was "unavailable," and he did not return any of the calls.  Pls'. SMF ¶ 46.  On August 10, 2005, Dr. Meador faxed the Andersons' attorney, demanding dissolution of the contract and return of escrow.  On August 15, 2005, plaintiffs retained their current attorney, Michael D. Pinnisi, Sr., ("Pinnisi") as litigation counsel.

On or about August 17, 2005, the Andersons commenced a lawsuit against plaintiffs seeking to enforce the contract.  On September 6, 2005, the Andersons' attorney submitted an offer to cure to the Meadors, which they rejected on September 9, 2005.  On November 20, 2008, the Appellate Division Third Department found that questions of fact as

to material misrepresentations made by the Andersons existed so that it could not be determined as a matter of law if the contract was void as of its inception.  The court let the Meadors' cross-claim for fraud stand, and reversed the lower court's order directing the $25,000 escrow funds payment to the Andersons.  Anderson v. Meador, 56 A.D.3d 1030 (N.Y. App. Div. 3d Dep't 2008).  Thereafter the Andersons and Meadors settled the action with the return of the $25,000 to the Meadors, the dismissal of all remaining claims, and the exchange of releases.

The Meadors filed the instant action on May 27, 2008, to obtain reimbursement of their expenses, attorney's fees, compensation for defendants' alleged misconduct, and to deter repetition of the conduct engaged in by defendants.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveal no genuine issue as to any material fact. FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

After the moving party has satisfied its burden, the non-moving party must assert specific facts demonstrating there is a genuine issue to be decided at trial.  FED. R. CIV. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511.  The non-moving party "must do

more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### B. Defendants' Motion for Summary Judgment

Defendants assert two bases upon which they should be granted summary judgment and the Meadors' claims dismissed. First, defendants contend that the Meadors' legal malpractice claim fails because the required proximate cause element cannot be proved. Second, Albanese and the Office argue that plaintiffs' breach of fiduciary duty, negligent misrepresentation, and negligence claims are duplicative of the legal malpractice claim and therefore must be dismissed.

#### 1. Legal Malpractice Claim

An action for legal malpractice requires proof of three essential elements: (1) the negligence of the attorney; (2) that the negligence was a proximate cause of the loss sustained; and (3) actual damages. Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, 170 A.D.2d 108, 114 (N.Y. App. Div. 1st Dep't 1991), aff'd, 80 N.Y.2d 377 (1992). For a defendant in a legal malpractice action to succeed on a motion for summary judgment, evidence must be presented in admissible form establishing that the plaintiffs are unable to prove at least one of the essential elements of a legal malpractice cause of action. Carney v. Philippone, 332 F.3d 163, 167 (2d Cir. 2003).

To establish causation, plaintiffs must show they would have prevailed in the underlying action or would not have incurred any damages, but for the lawyer's negligence.

Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 8 N.Y.3d 438, 442 (2007) (citing Davis v. Klein, 88 N.Y.2d 1008, 1009-10 (1996)).  Albanese argues none of the actions taken by himself or the Office constituted the proximate cause of any damages sustained by the Meadors because they obtained return of their $25,000 deposit.  Defendants contend return of the deposit was what plaintiffs sought for Albanese to do, therefore, they suffered no damages resulting from his alleged inaction.

Further, Albanese and the Office maintain because Pinnisi made the same argument defendants made in demanding return of the escrow funds - that the contract was void *ab initio* due to misrepresentation, both "were following their clients' wishes, and took valid legal positions."  Defs'. Memorandum of Law, at 3, Dkt. No. 27-28.  The Meadors argue they suffered additional losses such as the cost of travel to attend the closing, defending the lawsuit filed by the Andersons, expenses incurred in preparing to close, and giving up other real estate opportunities.

Viewing the facts in the light most favorable to plaintiffs, Albanese gained personal knowledge of the structural defects through previously representing the Andersons and defending their case against him, and did not disclose any actual or potential conflict of interest to the Meadors at the time they retained him.  Plaintiffs have presented an expert affidavit and report which allege, *inter alia*, that his failure to disclose known defects in the title and property caused the loss of the Meadors' opportunity to avoid the contract pursuant to the attorney approval clause or the Notice to Cure provision, or to declare the contract void based on the Andersons' misrepresentations.  See Ross Aff., Dkt. No. 34-6.  The Meadors' expert also contends that but for Albanese's failure to pursue the *ab initio* argument in litigation and his failure to act on a variety of pre-litigation options including demanding

sellers cure all title defects, plaintiffs would not have had to engage in the subsequent lawsuit which reached the Appellate Division. Id.

Defendants have not presented enough evidence demonstrating plaintiffs are unable to prove the required proximate causation. Issues of fact exist as to whether, but for Albanese's alleged inaction, the Meadors would have contracted with the Andersons to buy the property in the first place, and whether they would have been able to terminate the contract pre-litigation. Albanese and the Office are not entitled to summary judgment dismissing plaintiffs' legal malpractice claim.

### 2. **Breach of Fiduciary Duty**, **Negligent Misrepresentation, and Negligence Claims**

Defendants next argue plaintiffs' causes of action for breach of fiduciary duty, negligent misrepresentation, and negligence should be dismissed because the claims are premised on the same facts and seek identical relief as the claim for legal malpractice. Plaintiffs claim the fiduciary duty and malpractice claims are based upon different facts and would obtain different damages.

Where claims of negligence, breach of contract, breach of fiduciary duty, negligent misrepresentation, or fraudulent misrepresentation are premised on the same facts and seek identical relief as a claim for legal malpractice, those claims are duplicative and must be dismissed. Joyce v. Thompson Wigdor & Gilly LLP, No. 06civ15315, 2008 WL 2329227, at *14 (S.D.N.Y. June 3, 2008) (citing Norwind v. Rowland, No. 04-9725, 2007 WL 2962350, at *4 (S.D.N.Y. Oct.10, 2007) (breach of fiduciary duty and breach of contract); Iannazzo v. Day Pitney LLP, No. 04civ7413, 2007 WL 2020052, at *10-11 (S.D.N.Y. July 10, 2007) (same); Serova v. Teplen, No. 05civ6748, 2006 WL 349624, at *4 (S.D.N.Y. Feb.16, 2006) (negligent

- 8 -

and fraudulent misrepresentation); Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 10 A.D.3d 267, 271 (N.Y. App. Div. 1st Dep't 2004) (breach of fiduciary duty); Turk v. Angel, 293 A.D.2d 284, 284 (N.Y. App. Div. 1st Dep't 2002) (breach of fiduciary duty and breach of contract); Mecca v. Shang, 258 A.D.2d 569, 570 (N.Y. App. Div. 2d Dep't 1999) (negligent and fraudulent misrepresentation)).

Plaintiffs adequately set forth in their supporting papers that the fiduciary duty claim relates to actions at the outset of the representation when Albanese and the Office were retained, while the legal malpractice claim relates to their handling of matters during the course of representation. The Meadors argue breaches of fiduciary duty included defendants' failure to disclose the conflict of interest arising from past representation of the Andersons and failure to disclose known defects in the title and condition of the property. Conversely, the legal malpractice claim is based on their failure to conduct due diligence, advise plaintiffs as to the progress of the transaction, and extract them from the contract when it was still permitted. Damages for the fiduciary duty claim include becoming bound by the contract, incurring expenses preparing to close, and giving up other opportunities, while those for legal malpractice include the cost of defending the lawsuit brought against them by the Andersons.

Plaintiffs have presented sufficient evidence alleging two distinct bases for the legal malpractice and breach of fiduciary duty claims, and therefore the fiduciary duty claim is not duplicative of the legal malpractice claim. Plaintiffs make no specific arguments as to the negligent misrepresentation and negligence claims, and accordingly those claims will be dismissed as duplicative of the legal malpractice claim for the reasons discussed above.

### 3. Claim for Attorney's Fees

Damages in a legal malpractice action are meant "to make the injured client whole." Campagnola v. Mulholland, Minion & Roe, 76 N.Y.2d 38, 42 (1990). "A plaintiff's damages may include litigation expenses incurred in an attempt to avoid, minimize, or reduce the damage caused by the attorney's wrongful conduct." Rudolph, 8 N.Y.3d at 443 (internal quotations omitted) (citing DePinto v. Rosenthal & Curry, 237 A.D.2d 482, 482 (N.Y. App. Div. 2d Dep't 1997)). Plaintiffs contend and defendants concede on reply that the Meadors' legal costs and fees in the Andersons' lawsuit against them are recoverable as damages here. See Rudolph, 8 N.Y.3d at 443 (citations omitted); see also Lory v. Parsoff, 296 A.D.2d 535, 535 (N.Y. App. Div. 2d Dep't 2002). Thus, Albanese and the Office are not entitled to summary judgment dismissing plaintiffs' claim for attorney's fees.

### C. Plaintiffs' Cross-Motion for Summary Judgment

Plaintiffs cross-moved for summary judgment as to liability on the breach of fiduciary duty and legal malpractice claims. Defendants opposed and maintain both causes of action lack the required proximate cause.

### 1. Legal Malpractice Claim

The Meadors argue summary judgment should be granted as to liability on the legal malpractice claim because defendants were negligent as a matter of law based on their failure to conduct due diligence, failure to adequately advise their clients, and failure to properly terminate the transaction.

To sustain an action for legal malpractice, a plaintiff must establish that the lawyer fell below the applicable standard of care and that a reasonable factfinder in the underlying suit would have arrived at a different result but for the attorney's negligence. Rubens v.

Mason, 387 F.3d 183, 189 (2d Cir. 2004) (citing McCoy v. Feinman, 99 N.Y.2d 295, 301 (2002)).  A lawyer's conduct falls below the applicable standard of care when the attorney fails to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession.  Id.; see also Darby & Darby, P.C. v. VSI Int'l, Inc., 95 N.Y.2d 308, 313 (2000) (citations omitted).

While the issue of whether certain conduct constitutes legal malpractice is ordinarily a question of fact for the jury, a plaintiff is entitled to summary judgment where the facts are undisputed, the defendant's conduct fell below any permissible standard of due care, and the plaintiff's conduct was not involved.  Logalbo v. Plishkin, Rubano & Baum, 163 A.D.2d 511, 514 (N.Y. App. Div. 2d Dep't 1990) (citing Andre v. Pomeroy, 35 N.Y.2d 361, 365 (1974)).

As noted above, plaintiffs presented expert testimony that Albanese and the Office's actions and inactions fell below the applicable standard of care for an attorney.  See Ross Aff.  However, defendants submitted expert testimony that their conduct did not violate the standard of care.  See Sneeringer Aff., Dkt. No 27-25.

Summary judgment on the first two bases is not warranted because of the conflicting expert testimony.  It will be for the trier of fact to determine credibility and resolve other disputed facts.  The third ground however merits additional discussion.

One of plaintiffs' experts testified, *inter alia*, that Albanese's failure to follow the Purchase Agreement's express terms regarding resolution of objections to title encumbrances constituted negligence as a matter of law.  See Ross Aff.  Plaintiffs cite to two Appellate Division Second Department cases and one extremely old New York Court of Appeals case in which the courts found the attorneys' conduct of disregarding express contract terms and other settled rules to be negligence as a matter of law.

In Logalbo, a rider to a real estate contract gave the plaintiffs an option to cancel by written notice within a specified time. Logalbo, 163 A.D.2d at 512. The plaintiffs exercised the option and instructed their attorney to give notice of cancellation to the seller. Id. The attorney provided oral notice to the seller's attorney within the requisite period, and also sent written notice. Id. However, the letter was not received until after the expiration of the time prescribed in the contract. Id. The plaintiffs put a stop on their down payment check, and thereafter the seller commenced a breach of contract action. Id. The plaintiffs subsequently commenced a legal malpractice action against their attorney, who argued that he reasonably relied upon a representation by the seller's attorney that personal delivery of the written notice was not required, and that the contract was considered cancelled via the oral notice. Id. at 513. The court held the attorney's reliance upon the alleged verbal assurance that oral notice sufficed fell below any permissible standards of due care. Id. at 514. The court found "[t]o disregard the long-standing rule that written notice of cancellation must be received within the time prescribed constitutes, as a matter of law . . . negligence, if, knowing the rule, the attorney disregards it." Id.

In Shaughnessy v. Baron, the plaintiff's lease for commercial property detailed the requirements for assignment, including a notice provision. Shaughnessy, 151 A.D.2d 561, 562 (N.Y. App. Div. 2d Dep't 1989). The defendant attorney as counsel to the plaintiff lessee wrote to the landlord to notify him of an assignment, but the attorney failed to comply with any of the contract provisions. Id. As a result, the plaintiff and the prospective purchaser of her business were ousted from the premises. Id. The court found "[b]ecause the lease in this case clearly and unambiguously sets forth both notice and assignment provisions, which

admittedly were not followed by the defendant, and . . . [he] failed to comply with any of these lease provisions, . . . defendant was negligent as a matter of law." Id.

In Trimboli v. Kinkel, the plaintiffs retained the defendant attorney to search the title to land they were about to buy. Trimboli, 226 N.Y. 147, 149 (1919). The defendant discovered that a previous executor who had a power to sell the land, had conveyed his interest in the land in exchange for another parcel of land. Id. Therefore the transaction was not a sale for money, but an exchange. Id. Based on well-settled law that a power to sell is not a power to exchange, there was a flaw in the record title. Id. The defendant however made no mention of this to the plaintiffs, and made no investigation of the occupation of the land. Id. at 150. The defendant instead reported that the title was good and marketable. Id. The court found "[i]t is negligence to fail to apply the settled rules of law that should be known to all conveyancers" and knowing the facts, the attorney was chargeable with knowledge of their significance. Id. at 150-51.

These cases are unpersuasive. In Logalbo and Shaughnessy, the attorneys set out to accomplish a specific objective, respectively to cancel the contract and to obtain permission to assign, and then failed to comply with the express provisions required by the contract. In the instant case viewing the facts in the light most favorable to defendants, when the Meadors notified Albanese they no longer wanted to proceed with the transaction, he saw no need to follow the Notice to Cure provisions because the Andersons allegedly agreed to withdraw from the contract and because the defects in title were incurable in his opinion.

Therefore it is arguable that his decision to proceed with the *ab initio* argument and forego the opportunity to cure the encumbrances in accordance with the Purchase Agreement was a strategic one. That is not to say it was a smart decision or the exercise of

reasonable discretion, or that it does not constitute malpractice in light of the other facts, but standing alone Albanese's failure to pursue the Notice to Cure provisions was not negligent as a matter of law.

Trimboli is distinguishable from the instant matter because in that case the defendant attorney had knowledge of the flaw in title and reassured his clients title was clear. Here, it is disputed as to what knowledge about the title and structural defects Albanese had and when he may have acquired the knowledge, precluding summary judgment in favor of the Meadors.

### 2. Breach of Fiduciary Duty Claim

An attorney stands in a fiduciary relationship to his or her client.  To state a claim for breach of fiduciary duty, a plaintiff must show (1) the existence of a fiduciary duty by the defendant; (2) the defendant's breach of that duty; and (3) damages suffered by the plaintiff proximately caused by the breach.  SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 342 (2d Cir. 2004).  The fiduciary relationship imposes on an attorney "[t]he duty to deal fairly, honestly and with undivided loyalty . . . including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the clients' interests over the lawyer's."  In re Cooperman, 83 N.Y.2d 465, 472 (1994).

Plaintiffs contend defendants breached their fiduciary duty by failing to disclose a conflict of interest and by failing to disclose known encumbrances and defects.  See Mooney Aff., Dkt. 34-4.  Viewing the facts in the light most favorable to defendants, Albanese did not have knowledge of the encumbrances and structural defects when the representation began. Factual disputes also exist as to whether he disclosed to the Meadors his previous

representation of the Andersons. Thus, plaintiffs are not entitled to summary judgment on liability.

## IV. CONCLUSION

Defendants Albanese and the Office have not satisfied their burden of showing that plaintiffs are unable to establish proximate cause on the legal malpractice claim, therefore summary judgment will be denied. The Meadors' claims for negligent misrepresentation and negligence are duplicative of the legal malpractice claim, and defendants are entitled to summary judgment dismissing those claims as a matter of law. However, plaintiffs presented evidence demonstrating separate bases for the legal malpractice and breach of fiduciary duty claims, thus, summary judgment for defendants is denied on those claims.

Questions of fact exist as to whether Albanese had knowledge of the defects in title and structural flaws and if so when he acquired such knowledge, and whether he disclosed to the Meadors his prior representation of the Andersons. Thus, plaintiffs are not entitled to summary judgment on liability.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART;

2. The Third (Negligent Misrepresentation) and Fourth (Negligence) Causes of Action are DISMISSED;

3. Plaintiffs' cross-motion for summary judgment on liability is DENIED; and

4. The First (Legal Malpractice) and Second (Breach of Fiduciary Duty) Causes of Action remain for trial.

IT IS SO ORDERED.

_____
United States District Judge

Dated: September 23, 2010
       Utica, New York.